UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEVEN J. WOLK,
                Plaintiff,

-vs-                                      Case No. 6:05-cv-1722-Orl-18KRS

SEMINOLE COUNTY, FLORIDA,
DONALD F. ESLINGER,
SARA L. KLEIN,
RICHARD DICKENS,
CHARLES K. HILTON,
                Defendants.

## ORDER

THIS CAUSE comes before the Court on Defendants' Motion for Summary Judgment (Doc. 30, filed September 8, 2006), to which Plaintiff has responded in opposition. (Doc. 36, filed October 10, 2006.) Plaintiff Steven J. Wolk ("Plaintiff") brings this action against: (1) Seminole County, Florida ("the County"); (2) Donald F. Eslinger ("Sheriff" or "Eslinger"), individually and in his official capacity as Sheriff of Seminole County, Florida ("the County"); and (3) Sara L. Klein, Richard Dickens, and Charles K. Hilton ("the Deputies"), individually and in their official capacities as Deputy Sheriffs of the Seminole County Sheriff's Office. The Motion for Summary Judgment is brought by Defendants Eslinger, Klein, Dickens and Hilton. This Court previously dismissed the claim against the Deputies in their official capacities, but not in their individual capacities. (Doc. 28, filed April 10, 2006.) After reviewing the motions and memoranda provided by each party, the Court grants-in-part and denies-in-part the Motion for Summary Judgment.

## I. BACKGROUND

Most of the facts pertaining to this case are undisputed:

On November 23, 2001, at approximately 11:30 a.m., Deputies Klein and Dickens were dispatched to a Maitland, Florida, residence in response to a 911 call. Deputy Klein was training Deputy Dickens and they were riding in the same patrol car. Deputy Hilton responded as well, as back-up. Plaintiff resided at the residence with his parents; Plaintiff's sister Gina L. Wolk ("Gina") was visiting from Dallas, Texas. Plaintiff and his sister had an argument regarding their father's health care which resulted in Gina dialing 911. The parties are in slight disagreement was to whether Gina gave any information to the 911 dispatcher, or instead immediately hung up before relaying any information regarding the argument with her brother. (See Doc. 30 at 5; Doc. 36 at 4.) Regardless, the Deputies responded to the call as a result.

Upon arriving at the Wolk residence, Deputy Klein spoke with Gina, while Deputy Hilton spoke with Plaintiff, about the argument. Thereafter, Deputy Klein also spoke with Plaintiff about what had happened. Deputy Klein claims that Plaintiff told her that "he had pushed Gina's hands out of his face defensively." (Doc. 30 at 5.) Plaintiff, however, claims that he "at no time 'slapped' [Gina's] hands or any other part of [Gina], or at any time said that he had 'slapped' her hands." (Doc. 36 at 4.) Plaintiff also asserts that Gina "specifically told Deputy Klein that there had been no physical contact" between her and Plaintiff. (Id.) Deputy Klein, based on her conversation with Plaintiff, arrested him for battery in violation of Fla. Stat. § 784.03(1)(a).[1] Deputy Klein transported Plaintiff to Seminole County Jail where he was

---

[1] Fla. Stat. § 784.03(1)(a) states:
   The offense of battery occurs when a person:

incarcerated until posting a cash bond at approximately 4 p.m. on November 24, 2001. Plaintiff received a letter approximately two weeks later stating that the State Attorney's Office was not going to pursue the case.

Deputy Klein has stated that the "decision to arrest Plaintiff was made solely by [her] and she did not consult either Deputy Dickens or Deputy Hilton prior to making that decision." (Doc. 30 at 6; see Klein Aff. ¶ 10.)

Plaintiff has brought two causes of action before the Court relating to his arrest by the Seminole County Sheriff's Office after a call was placed to 911 on November 23, 2001. The first cause of action alleges a deprivation of Plaintiff's civil rights brought pursuant to 42 U.S.C. § 1983. Plaintiff claims the action arises under the Fourth and Fourteenth Amendments of the United States Constitution, and alleges that he was falsely arrested and incarcerated without probable cause. The second cause of action is for a declaratory judgment declaring a policy pursued by the Seminole County Sheriff's Office to be unconstitutional and for an injunction prohibiting officials within the County from further pursuing the policy. Plaintiff alleges that the County's policy relating to domestic disturbance calls made to 911 is unconstitutional because it requires an arrest to be made, regardless of whether probable cause exists for the arrest.

---

1. Actually and intentionally touches or strikes another person against the will of the other; or
2. Intentionally causes bodily harm to another person.

## II. DISCUSSION

*A. Summary Judgment Standard*

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50.

Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

*B. Count I - Deprivation of Civil Rights under Section 1983*

Plaintiff filed suit under 42 U.S.C. § 1983, alleging that his arrest and day-long incarceration violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. Although section 1983 is not a source of substantive rights, it provides a conduit by which aggrieved parties may recover against those who have violated their rights under federal law. See 42 U.S.C. § 1983; see also Skinner v. City of Miami, 62 F.3d 344, 347 (11th Cir. 1995). To recover under section 1983, Plaintiff must prove that the Defendants acted under color of state law to deprive him of a right secured either under the Constitution or under federal law. Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999). Plaintiff asserts that he was arrested without probable cause, and subsequently falsely imprisoned for a period of more than 24 hours as a result of his arrest. Plaintiff's claim implicates the "Fourth Amendment's guarantee against unreasonable searches and seizures," which "encompasses the right to be free from arrest without probable cause." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

Defendants assert the defense of qualified immunity.[2] The purpose of qualified immunity is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted). To be eligible for qualified immunity, a government official must initially demonstrate that he or she was performing a "discretionary function" at the time the alleged violation of constitutional rights occurred. Crosby, 394 F.3d at 1332. If the government official meets this requirement, then the burden shifts to the plaintiff to demonstrate that the official is not entitled to qualified immunity. Id. The plaintiff must show two things in order to meet this burden: 1) that the defendant has in fact committed a constitutional violation; and 2) that the constitutional right the government official violated was "clearly established" at the time the violation occurred. Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

---

[2]The Eleventh Circuit has made it clear that when conducting a qualified immunity analysis at the summary judgment stage, the facts are taken in the light most favorable to the party asserting the injury:
> When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury. When a district court considers the record in this light, it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute. Thus, . . . material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity . . . .

Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) (citation omitted).

<mark>-6-</mark>

A government official is engaged in a discretionary function if the acts undertaken were "of a type that fell within the employee's job responsibilities." Id. (quoting Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)). The Deputies were clearly performing an act that fell within their job responsibilities here: they were responding to the Wolk residence as a result of a 911 call. Therefore, the Deputies (and Sheriff Eslinger, by proxy) were engaged in a discretionary function.

The question now becomes whether Plaintiff can meet his burden of showing that a constitutional violation occurred, and that the violated constitutional right was clearly established at the time of the incident. The Eleventh Circuit has specifically set down the parameters surrounding false arrest as it pertains to a section 1983 claim:

> A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest. Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense. Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information.

Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (citations and internal quotation marks omitted). A "totality of the circumstances" test must be applied to determine whether probable cause existed to enforce the arrest. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). "In determining whether probable cause exists, we deal with probabilities . . . [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. (internal quotation marks omitted).

As a basis for a finding of probable cause, Deputy Klein relied solely on her individual conversations with Plaintiff and Gina upon Klein's arrival at the residence. The remaining Defendants (Dickens, Hilton, and Eslinger) had nothing to do with the decision to arrest Plaintiff, and therefore their actions in the course of the incident are largely irrelevant for purposes of determining whether probable cause existed. The content of Deputy Klein's conversations with both Plaintiff and Gina are in dispute. Deputy Klein asserts that Plaintiff told her that "he had pushed Gina's hands out of his face defensively." (Doc. 30 at 5; see Pl. Dep. at 100; Klein Aff. ¶ 6.) However, in contrast, Gina has asserted that there was no physical contact between herself and Plaintiff. (Gina L. Wolk Aff. ¶ 7.) Additionally, Plaintiff has maintained that he only reacted in a defensive manner during the incident. (See Doc. 36 at 10-11; Pl. Dep. at 100.) In viewing the facts before the Court in a light most favorable to Plaintiff, the Court holds that there is a dispute of material fact that precludes a determination of whether there was probable cause to affect Plaintiff's arrest. Therefore, the Court holds that Plaintiff has pleaded a valid false arrest claim under section 1983 against Deputy Klein.

The Court holds, however, that the false arrest claims against Hilton, Dickens and Eslinger have no basis. These Defendants cannot be held liable for the actions of Deputy Klein. No evidence exists to indicate that any of the other Defendants were involved in Deputy Klein's decision to arrest Plaintiff (in fact, as noted previously, Deputy Klein herself stated that none of the other officers had any involvement in the decision to arrest Plaintiff). As a result, a section 1983 claim against Deputy Hilton, Deputy Dickens, and Sheriff Eslinger cannot proceed with regard to the false arrest claim, and summary judgment is granted as to all three individuals.

The Eleventh Circuit has also specifically set down the relationship between a false arrest claim and a false imprisonment claim under section 1983:

> A detention on the basis of a false arrest presents a viable section 1983 action. A false imprisonment claim under section 1983 is based on the protection of the Fourteenth Amendment against deprivations of liberty without due process of law. Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest. This false imprisonment claim under section 1983 is grounded in the Fourth Amendment's guarantee against unreasonable seizures.

Ortega, 85 F.3d at 1526 (citations omitted). Plaintiff must therefore demonstrate that his claim meets "the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment."[3] Id. Plaintiff avers in his complaint facts sufficient to satisfy the section 1983 standard for false imprisonment. The complaint demonstrates that as a result of the alleged unlawful arrest, Plaintiff "spent a total of 29 hours in jail and other activities related to this matter." (Compl. ¶ 23a.) As a result, Plaintiff has successfully pleaded a valid false imprisonment claim under section 1983 against Deputy Klein.

Again, however, the Court rejects the false imprisonment claim against Hilton, Dickens and Eslinger. As in the false arrest claim, these Defendants cannot be held responsible for the actions that were solely Deputy Klein's. Because no evidence exists to indicate that these three Defendants were involved in the determination of probable cause in arresting

---

[3] The elements of common law false imprisonment are: (1) intent to confine; (2) acts resulting in confinement; and (3) consciousness of the victim of confinement or resulting harm. Ortega, 85 F.3d at 1526 n.2.

Plaintiff, likewise there can be no claim that they were involved in Plaintiff's subsequent detention.

Due to the foregoing reasons, this Court holds that there is a disputed material fact that prohibits Deputy Klein from being granted summary judgment in this case. Deputies Hilton and Dickens, and Sheriff Eslinger, however, are granted summary judgment with regard to Plaintiff's section 1983 claims.

### C. Count II - Declaratory Judgment and Injunction Based on Unconstitutional Policy

Plaintiff alleges that a policy pursued by Seminole County, Sheriff Eslinger, and the Seminole County Sheriff's Office is unconstitutional because it requires deputies of the Sheriff's Office to make an arrest if a 911 call is placed alleging any kind of domestic violence. While Plaintiff asserts that this second cause of action is against all Defendants, he has only included Deputies Klein, Hilton and Dickens in a cursory fashion. The Court will therefore focus on the cause of action as against Sheriff Eslinger only.[4]

"A municipality may be held liable under [section] 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation."[5] Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978)). "A policy is a decision that is

---

[4] Seminole County has filed a motion for summary judgment regarding this cause of action as well. (Doc. 57, filed February 12, 2007.) Plaintiff has yet to file an opposition to this motion.

[5] Because the Court came to the conclusion in Count I that there is a dispute of material fact as to whether a constitutional violation had occurred in the arrest of Plaintiff, an inquiry into the policy of Seminole County, Sheriff Eslinger, and the Seminole County Sheriff's Office is necessary. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.")

officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Id. "A custom is a practice that is so settled and permanent that it takes on the force of law." Id.

In the present situation, Plaintiff has brought nothing before this Court to indicate that Sheriff Eslinger, or the Seminole County Sheriff's Office, or Seminole County itself, has instituted any kind of policy that would require law enforcement officers to effectuate an arrest every time they are dispatched due to a 911 call. Plaintiff has no evidence supporting his claim of a "custom" or "policy" whatsoever. Plaintiff was informed of this "policy" by a "friend of our maintenance man" that Plaintiff met one night and who told Plaintiff "that was how the different law enforcement agencies were handling domestic violence calls now." (Pl. Dep. at 127.) Such a flimsy claim cannot survive summary judgment. Therefore, summary judgment is granted as to Sheriff Eslinger as to Count II.

### D. *Attorney's Fees under 42 U.S.C. § 1988*

Section 1988 allows for a prevailing party in a section 1983 action to collect attorney's fees. However, the Supreme Court has held that a pro se litigant is not entitled to fees under the Civil Rights Attorney's Fees Awards Act, regardless of whether the litigant is an attorney. Kay v. Ehrler, 499 U.S. 432, 438 (1991). In the instant case, Plaintiff is proceeding pro se and is also an attorney. Therefore, unless he retains independent counsel, no attorney's fees can be recovered.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

(1) The Motion for Summary Judgment for Count I is **DENIED** as to Defendant Klein;

(2) The Motion for Summary Judgment for Count I is **GRANTED** as to Defendants Hilton, Dickens and Eslinger;

(3) The Motion for Summary Judgment for Count II is **GRANTED** as to Defendants Klein, Hilton, Dickens and Eslinger;

(4) Attorney's fees will not be awarded should Plaintiff prevail while working as a pro se litigant; and

(5) Plaintiff's Motion for Extension of Time (Doc. 37) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Orlando, Florida on this 16 day of February, 2007.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties